BEGELMAN & ORLOW
BY:    Ross Begelman
        Marc M. Orlow
        Regina D. Poserina
411 Route 70 East, Suite 245
Cherry Hill, NJ 08034
(856) 428-6020
Fax: (856) 428-5485
Email: regina.poserina@begelmanorlow.com
        Marc.orlow@begelmanorlow.com

---

## UNITED STATES  DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| United States of America, ex. rel., Kathleen Menold, M.S.N., APRN, FNP-C, and the State of New Jersey | : : : : : : | **C.A. NO. 3:17-cv-01728-PGS-LHG** <br><br> THE FALSE CLAIMS ACT <br> 31 U.S.C. § 3729 et seq. <br> and |
| Plaintiffs, <br><br> vs. <br><br> LOTUS FAMILY MEDICINE <br> AND <br> VEDAT OBUZ, M.D. <br> AND <br> OZLEM OBUZ <br><br> Defendants | : : : : : : : : : : : : | THE NEW JERSEY FALSE <br> FALSE CLAIMS ACT <br> N.J.C. 2A:32 C1 <br><br> FILED IN CAMERA AND <br> UNDER SEAL <br> PURSUANT TO 31 U.S.C. § 3730 <br><br> **JURY TRIAL DEMANDED** |

---

## FIRST AMENDED COMPLAINT PURSUANT TO
## THE FALSE CLAIMS ACT, 31 U.S.C. §3729 ET SEQ.; AND
## THE NEW JERSEY FALSE CLAIMS ACT, N.J.C. 2A: 32C1

Kathleen Menold, by and through her attorneys, files this

First Amended Complaint, under seal, pursuant to the False

Claims Act, 31 U.S.C. § 3729 et seq., and The New Jersey False

Claims Act, N.J.C. 2A:32C1; and alleges as follows:

I.    <u>INTRODUCTION</u>

1.    This is the First Amended Complaint,  alleging

violations of Federal and State laws, under the False Claims Act,

against Lotus Medical Center, Dr. Vedat Obuz, M.D., and Ozlem

Obuz, the supervisor of all offices and billings, and the biller for

Lotus and Dr. Obuz.

2.    Lotus Medical Center, Dr. Obuz, and Mrs. Obuz submit

false claims for payment or approval, and/or cause the submission

of false claims for payment or approval, to the Federal and State of

New Jersey Governments, under the Medicare, Medicaid, and

Tricare programs.

3.    These claims are false because Lotus, V. Obuz, and O.

Obuz,  are billing for services that are dangerous, life threatening,

not provided, and as a result upcoding, all done solely for the

purposes of billing Medicare, Medicaid, or Tricare.

4.    These claims are also false because they are provided by

unlicensed personnel, or not provided at all, but billed as if

provided by licensed personnel.

5.     These claims are also false because Lotus and Obuz provide kickbacks, in violation of the Antikickback Statute, in order to obtain payments from Medicare, Medicaid, or Tricare. Mrs. Obuz owns the pharmacy next door to defendant Lotus.  Dr. Obuz tells his patients to get their prescriptions filled in this pharmacy, without revealing that his wife owns the pharmacy.

6.     These claims are also false because Lotus, V. Obuz, and O. Obuz are fraudulently reporting services performed by providers whom no longer provide services at Lotus.


A.   <u>PARTIES</u>

7.     Kathleen Menold ("Ms. Menold" or "Relator") is an adult individual who resides in Burlington County, New Jersey.  Ms. Menold is a nurse practitioner, licensed as an advanced practice nurse by the State of New Jersey and the Commonwealth of Pennsylvania; and licensed as a registered nurse in both states.

8.     Lotus Medical Care ("defendant Lotus") is a general medical practice serving patients who are beneficiaries of

Medicare, Medicaid, Tricare, private insurance, and those with no insurance.

9.     Lotus was first established in 1988 by Vedat Obuz, M.D. ("defendant V. Obuz").

10.     Defendant Lotus' main office is at 515 S. Broad Street, Trenton, NJ. 08611.  Defendant Obuz owns the building where this office is located.

11.     Defendant Lotus also has offices for medical practice at 40 Fuld Street, Ste 307, Trenton, NJ, 08638 (the "Fuld office"), and 2906 Route 130 South, Cinnaminson, NJ, 08077 (the "Cinnaminson office").  Both of these offices are in rented space.

12.     Defendant V. Obuz is an adult individual, who lives in Merion Station, Pa.  Defendant V. Obuz is a medical doctor, licensed to practice medicine since at least 1988.  Defendant V. Obuz has practiced medicine as defendant Lotus since 1988.

13.     Defendant O. Obuz is an adult individual, who lives in Merion Station, PA.  Defendant O. Obuz is the office manager for all locations, the wife of Dr. Obuz, and the supervisor of all billing that occurs in each office.  Upon information and belief, Mrs. Obuz

is also an officer in defendant Lotus.

14.    Defendant O. Obuz also owns Medical Home Pharmacy, located next door to defendant Lotus, at 521 Broad Street, Trenton. Dr. Obuz refers patients to Medical Home for their prescriptions, without revealing to patients that he is an owner of Medical Home Pharmacy, or that his wife is an owner of such pharmacy.

15.    Defendant O. Obuz, as manager of all billing at defendant Lotus, actually submits claims for payment, and independently chooses the CPT code under which to bill all patient interactions.  Defendant O. Obuz performs all billing functions for defendant Lotus, performing much of her work from home in Pennsylvania after having come to the Trenton office to retrieve billing documents for purposes of billing submissions.

### B.    JURISDICTION AND VENUE

14.    This action arises under the FCA, 31 U.S.C. §§3729 et seq., and the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1345.

15.    This Court also has supplemental jurisdiction over the

claims brought by Relator on behalf of the State of New Jersey,

under their state FCA, pursuant to 28 U.S.C. §1367(a) and 31

U.S.C. §3732(b), and the individual state claims brought by Relator

pursuant to 28 U.S.C. §1367(a) and N.J.C.2A:32C1 et seq.

16.    This Court also has jurisdiction over the claims brought

by Relator on behalf of the State of New Jersey pursuant to N.J.C.

§2A:32C1 et seq.

17.    Venue in this district is proper pursuant to 31 U.S.C.

§3732(a) and 28 U.S.C. §1391(b) and © since one or more of the

Defendants transact business in this district and/or one or more of

the acts at issue occurred in this district; and pursuant to N.J.C.

2A:32C1.


II.    <u>FACTUAL BACKGROUND TO THIS CASE</u>

18.    Dr. Obuz has practiced general medicine in Trenton,

N.J., and Cinnaminson, N.J., or its surroundings, since 1988.

19.    The majority of the patients in the Lotus practice are

Medicare, Medicaid, or Tricare beneficiaries.

20.    The practice has, from time to time, employed

physicians and nurse practitioners to provide medical care to patients. Those physicians have included Renata Woodward, NP; Shafia Morrison, Dr. Shraytman, Dr. Gupta, and Natalie Georges. Each provider is licensed with the State of New Jersey.

21.   Defendant O. Obuz regularly writes medication prescriptions for patients, and signs them with Dr. Obuz' signature, when Dr. Obuz is not present, and at Dr. Obuz' direction.

22.   The practice also employs unlicensed personnel, which it holds out as licensed personnel. These persons see patients, and provide care, for which Lotus bills Federal and State programs.

A.   Rakshanda Khan was a gynecologist in Pakistan but is not licensed in the United States. Despite this status, she is referred to in the office as "Dr. Khan" and provides patient services at defendant Lotus.

B.   George R., now a former employee,  is a licensed doctor in Russia, but has not passed his boards in the United States. George provided injections, and wrote patient histories and physicals, and other patient services, for defendant Lotus despite

not having a medical license.

      C.    Sara is a veterinarian who is providing patient care, including but not limited to physical examinations, for patients in the Cinnaminson office.  Sara is writing patient history and physical exams for patients that she has not examined, then filing such in the patient charts.  All of this is being performed to make it appear that patients were examined by defendant V. Obuz.

      D.    Dr. Carol Skipper.  Dr. Skipper has a suspended medical license, but defendant Dr. Obuz is having Dr. Skipper evaluate patients and then bill for those services under his name.

23.    For purposes of the Federally funded programs, each licensed physician or nurse practitioner has her or his own "panel" of patients under Health Maintenance Organization plans funded by Medicare or Medicaid.  For each patient, defendant Lotus receives a monthly capitated payment.

24.    Defendant O. Obuz performs all billing functions for defendant Lotus.  There is no place on the intake sheets for a Common Procedural Terminology (CPT) code to be placed on, or attached to, a visit by the licensed provider who saw the patient.

Usually, in the common practice of medicine, intake sheets have check boxes that the provider can mark with an "x," permitting the provider to determine the appropriate CPT code.

25.    Instead, defendant Lotus permits defendant O. Obuz, an unlicensed person who does not see patients,  to determine the appropriate CPT code for each visit as part of her billing function. Then, defendant O. Obuz submits the claims for payment to Federal payors.

## III.    RELEVANT FEDERAL AND STATE LAWS

### A. The Federal Health Care Programs

26.    The Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §1395 et seq., (hereinafter "Medicare") is a Health Insurance Program administered by the Government of the United States that is funded by taxpayer revenue. The program is overseen by the United States Department of Health and Human Services. Medicare is a health insurance program that provides for the payment of hospital services, medical services, prescription drugs,  and durable medical equipment to persons over sixty-five

(65) years of age and others that qualify under the terms and conditions of the Medicare Program.

27.    The Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396v (hereafter "Medicaid"), is a Health Insurance Program administered by the Government of the United States and the various individual States and is funded by State and Federal taxpayer revenue. The Medicaid Program is overseen by the United States Department of Health and Human Services. Medicaid was designed to assist participating states in providing medical services, durable medical equipment and prescription drugs to financially needy individuals that qualify for Medicaid.

28.    The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") (now known as "TRICARE"), 10 U.S.C. § 1071-1106, provides benefits for health care services furnished by civilian providers, physicians, and suppliers to members of the Uniformed Services and to spouses and children of active duty, retired and deceased members. The program is administered by the Department of Defense and funded by the Federal Government. CHAMPUS pays for, among other items and

services, medical care and services for its beneficiaries.

29.    The Federal Employees Health Benefits Program ("FEHBP") provides health care benefits for qualified federal employees and their dependents. It pays for, among other items and services, prescription drugs for its beneficiaries. (Together these programs described above shall be referred to as "Government Health Care Programs," or "Federal Payors," ).

### B.    The False Claims Act

30.    The Federal FCA, 31 U.S.C. § 3729(a)(1) makes "knowingly" presenting or causing to be presented to the United States any false or fraudulent claim for payment, a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and a civil monetary penalty of between $11,000 and $21, 563 per claim.

31.    The Federal FCA, 31 U.S.C. § 3729(a)(2) makes "knowingly" making, using, or causing to be used or made, a false record or statement to get a false or fraudulent claim paid or approved by the Government, a violation of federal law for which

the United States may recover three times the amount of the damages the Government sustains and a civil monetary penalty of between $11,000 and $21, 563, per claim.

32.    The Federal FCA, 31 U.S.C. sec. 3729(a)(3) makes any person, who conspires to defraud the United States by getting a false or fraudulent claim allowed or paid, liable for three times the amount of the damages the Government sustains and a civil monetary penalty of between $11,000 and $21, 563 per claim.

33.    The Federal FCA defines a "claim" to include any request or demand, whether under contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested.

## C.    The New Jersey State False Claims Act

34.    New Jersey  has enacted a State False Claims Act

similar to the federal FCA, permitting a private person such as
Relator to bring suit to recover on behalf of New Jersey from
persons that knowingly submit false claims to the State or engage
in related misconduct, and providing for awards to a private person
bringing the action if the State prevails in the actions.

### D.    The Anti-Kickback Statute

35.    The Medicare, Medicaid and Anti-Kickback Act ("AKA")
42 U.S.C. §1320a-7b(b), makes it illegal to:

> *offer,* receive, or solicit *any remuneration*, kickback, bribe, or
> rebate, whether directly or indirectly, overtly or covertly, in
> cash or in kind, to or from any person in order *to induce such*
> *person to purchase*, lease, or order, or to arrange for or
> recommend the purchasing, leasing, or ordering of *any good,*
> *service, or item for which payment may be made in whole or*
> *in part under a Federal Health Care Program*.

Many States have similar laws pertaining to the Medicaid
program.

### E.    Appropriate Common Procedural Terminology Coding For Evaluation And Management Office Visits.

36.     Common Procedural Terminology ("CPT") is a set of codes used by physician practices, medical offices, hospitals, and others to describe medical, surgical, and diagnostic procedures and services performed on patients, and report those interactions to entities such as Federal payors and  health insurance companies.

37.     Evaluation and Management CPT codes ("E/M") are procedural codes used to describe the patient visit to a doctor and report those visits to Federal payors and health insurance companies.  There are multiple E/M codes, distinguished by the documentation requirements for each individual E/M code.  The exact requirements are dictated by CMS' E/M guidelines.[1]

38.     For purposes of this action, the applicable E/M codes are 99211, 99212, 99213, 99214, and 99215. The CPT E/M guidelines listed below are taken from ones published by Palmetto GBA, a Medicare Administrative Contractor. See, Exhibit **A**.

39.     For E/M code 99211, the office visit of an established patient may not require the presence of a physician or other

---

[1]The E/M guidelines were developed by the CMS  in conjunction with the American Medical Association.

qualified health care professional.  The patient's presenting problems should be minimal. Typically, five minutes are spent performing or supervising services.

40.    For E/M code 99212, the office visit is for an established patient, and requires at least two of these three key components be present in the medical record: a problem focused history; a problem focused examination; straightforward medical decision making.  The patient's presenting problems are usually self-limited or minor. Typically, 10 minutes are spent face-to-face with the patient and/or family.

41.    For code 99213, the office visit requires at least two out of these three key components to be present in the medical record: an expanded problem focused history; an expanded problem focused examination; evidence of medical decision making of low complexity.  The presenting problems are of low to moderate severity. Typically 15 minutes are spent face-to-face with patient and/or family.

42.    For code 99214, a patient visit requires a detailed assessment with at least two out of these three key components to

be listed in the medical record: a detailed history; a detailed examination; evidence of medical decision making of moderate complexity.  The presenting problems are of moderate to high severity. Typically 25 minutes are spent face-to-face with the patient and/or family.

43.    CPT code 99215 is used for a comprehensive patient assessment. This code requires at least two out of these three components: a comprehensive history; a detailed examination; evidence of medical decision making of high complexity.  The patient  assessment is broad in scope, demonstrating extensive understanding of the patient's condition.  The presenting problems are of moderate to high severity. Typically 40 minutes are spent face-to-face with the  patient and/or family.

## IV.  SPECIFIC INSTANCES OF FRAUD

44.    Ms. Menold is aware of numerous examples of fraud. The following examples are a sample of the numerous examples witnessed by Ms. Menold.  Ms. Menold believes, and therefore avers, that the care provided at defendant Lotus is dangerous,

illegal, unethical, and in violation of Federal and State laws.

45.    Based upon what Ms. Menold has seen while employed at defendant Lotus, she has a reasonable belief that the practices and actions she has witnessed have been ongoing for the past ten years.  This belief is based upon the medical records that she has reviewed, of practices that occurred before she was employed, which show that extremely dangerous, incompetent, reckless medical care was being provided, thereby supporting the conclusion that claims submitted for this care were false.

46.    Patient D.F., a Medicare beneficiary, was first seen by Dr. Obuz on August 2, 2013.

47.    On March 6, 2017, Ms. Menold witnessed Dr. Obuz write a prescription in response to a phone request from D.F. for Glucometer test strips and lancets.  Ms. Menold then witnessed Dr. Obuz direct another staff member to take a prescription Dr. Obuz had just written for D.F., and attach this prescription to a billing document, then place the bill in the pile for defendant O. Obuz to bill to Federal payors, so that the prescription would become a billable visit for Medicare purposes.  See, Exhibit B.

48.    Dr. Obuz directed the staff member to fill out D.F.'s patient intake form, to become the "billable event," using vital signs (Blood pressure, heart rate, respiratory rate, and height) from the patient's previous visit of May 13, 2016.  The staff member did as she was told.  Medical records from March 6, 2017, and medical record from May 13, 2016, show same exact vital signs.  See, Exhibit B.

49.    For care delivered on those two dates, and numerous other dates, Lotus submitted claims for payment to Medicare for care that was not delivered.

50.    Ms. Menold has witnessed frequent times that Dr. Obuz bills for patient visits when he speaks to a patient over the phone to fill a prescription.

51.    Ms. Menold, and others, witness that Dr. Obuz does not own a stethoscope.  He never uses one during patient appointments.  He rarely touches the patients, usually standing in the doorway speaking to the patients from across the room.

52.    Dr. Obuz' patient appointments usually last less than one to two minutes.  Dr. Obuz regularly states to defendant Lotus

employees, including Ms. Menold, that he sees 68 to 70 patients a day.  Ms. Menold knows this is true because on instances where Dr. Obuz decides not to come to work, she is left dealing with the over 60 patients that have been scheduled to see Dr. Obuz that day.

53.    Despite seeing over 60 patients a day, Dr. Obuz bills for high level E & M codes, such codes mandating over ten minutes of face to face patient time per patient.  At the rate for CPT code 99213, the main code used by Dr. Obuz, it would take Dr. Obuz fifteen hours a day to see those 60 plus patients.  Office schedules will show that Dr. Obuz is never in the office more than 8 hours a day.

54.    On January 8, 2016, Dr. Obuz saw D.F. for prescription refills, and lab results.  No notes were contained in the records, but six items related to the patient's health were noted, and seven medicines were noted.

55.    For this visit, Dr. Obuz, by and through Mrs. Obuz, submitted a claim for payment to Medicare under CPT code 99214.  CPT Code 99214 means that the patient received a  Level 4

Established Office Visit.  This code represents the second highest level of care for established office patients.   The Medicare allowable reimbursement for this service is $108.13 and it is worth 1.5 work RVUs.  See, Exhibit C.

56.    Based on Ms. Menold's past experience, Dr. Obuz spent less than five minutes with this patient.  In most instances, Dr. Obuz spends one to two minutes with his patients.

57.    Dr. Obuz authorized, and Mrs. Obuz submitted a claim for payment to Medicare using CPT code 99213 for D.F., for a visit on December 19, 2014, where Dr. Obuz renewed D.F.'s prescriptions without any exam or other discussions.

58.    The reimbursement for this level of care is $73.40 and is worth 0.97 work RVUs.  Almost no notations are present in the medical records for this visit.

59.    On April 1, 2014, D.F. was seen at defendant Lotus. Minimal care was documented, except for a list of medicines and a "regular check up with BP and DM."  This visit was submitted for payment to Medicare, for CPT code 99214, despite no medical documentation to verify any care having been provided.   See,

Exhibit D.

60.    Patient Z.G., is a Medicaid patient.  On March 17, 2016, Z.G. was seen to receive a prescription for an xray.  This visit was submitted for payment to Medicaid as CPT code 99212.  On March 31, 2016, Z.G. was seen to review her xrays.  No provider notes are contained on the visit chart.  This visit was submitted for payment as CPT code 99214.    See, Exhibit E.

61.    Z.G.'s medical record for these visits do not contain any notation of a problem focused history or examination, or any evidence of medical decision making.

62.    Upon information and belief, Dr. Obuz did not provide enough care to qualify for the CPT code 99214 level of care.  This belief is held because Ms. Menold has personally witnessed Dr. Obuz with patients, and witnessed that Dr. Obuz spends less than five minutes with each patient.  Ms. Menold has also seen Dr. Obuz' patients for follow up visits, and witnessed that the medical records are devoid of information.

63.    For the following patients, on the following dates, defendant V. Obuz created a patient event chart which was used to

upcode the billing statement, by defendant O. Obuz.  This upcoded

bill was then submitted for payment, by defendant O. Obuz, for

payment by Federal payors.

| Patient | Date of Service | CPT code | Payor | Notes |
|---|---|---|---|---|
| MeA | 10/4/16 | 99213 | NJ Health/ Medicaid | |
| | 10/14/15 | 99396 | | physical |
| | 4/24/15 | 99213 | | |
| | 4/4/14 | 99204/ 99386 | | physical |
| MaA | 6/21/16 | 99213 | United Medicaid | |
| | 3/22/16 | 99212 | | medication refill taped to chart |
| | 1/9/16 | 99214 | | minimal writing on record |
| | 9/22/15 | 99213; 99386 | | medication refills and physical charged separately |
| | 9/10/15 | 99213 | | charged for filling out Walgreens form |

|  | 4/8/15 | 99214 |  | discuss x-ray and MRI results |
|---|---|---|---|---|
| SA | 9/6/16 | 99214 | United Medicaid | medication refill |
|  | 8/23/16 | 99216 |  | complains of cough |
|  | 8/16/16 | 99212 |  | medication refill taped to chart |
|  | 7/19/16 | 99214 |  | follow up lab work |
| FA | 7/9/16 | 99212 |  | medication refill taped to chart |
|  | 3/31/15 | 99214 |  | labwork and complaint follow up |
|  | 5/15/14 | 99212 |  | medication refill taped to chart |
|  | 6/25/13 | 99213 |  | complaints with no notes |
| YA | 12/10/16 | 99213, 15851 (suture removal) | Ameri-choice | suture removal, no notes |

| CC | 8/24/15 | 99214 | Medicaid | follow up for return to work; no medical eval |
| LF | 5/15/15 | 99213 | Medicaid | rash, medication refills |
| | 12/8/14 | 99214 | | medication refills, pain |
| KF-B | 11/28/16 | 99213 | | labwork follow up |
| | 8/17/16 | 99214 | | back pain, dry cough |
| | 7/28/15 | 99213 | | filling out driver handicap forms |
| | 10/29/14 | 99214 | | multiple complaints but no notes |
| | 11/20/13 | 99214 | | labwork, no notes |
| SeF | 8/12/16 | 99393 | NJ Health | child's physical with no notes |
| CG | 4/17/16 | 99214 | United/ Medicaid | medication refills, back pain |
| | 10/13/14 | 99214 | | LUQ pain, no notes |

| RK | 12/29/15 | 99212 | Medicare | "shot," no notes. |
|---|---|---|---|---|
| SL | 2/8/16 | 99213 | NJ Health/ Medicaid HMO | cough and cold, no notes |
| | 10/18/15 | 99395 | | physical; no exam notes but check marks |
| MaM | 1/7/14 | 99212 | Horizon Direct Access/ Medicaid | labwork drawn; no provider visit |
| TM | 5/9/16 | 99213 | NJ Health | cough/cold no exam notes |
| | 3/31/15 | 99214 | | labwork results, no exam notes |
| | 5/29/14 | 99213 | | medication refill taped to chart |
| AO | 1/31/17 | 99212/ 99393 | Medicare | mostly blank annual physical exam |
| HO | 11/10/16 | unknown; Medicaid paid $909 | United/ Medicaid | medication refill taped to chart |

|  | 12/1/16 | unknown; Medicaid paid $90 |  | two medication refills taped to chart |
|---|---|---|---|---|
| HP | 10/27/16 | 99214 | United/ Medicaid | mostly blank chart, ultrasound results |
|  | 1/12/16 | 99214/ 99396 |  | physical exam, arrow markings, no notes |
|  | 10/13/15 | 99213 |  | filling out disability papers |
|  | 8/3/13 | 99213 |  | exam with minimal notes |
| MP | 3/10/15 | 99213 | United/ Medicaid | c/o allergy symptoms |
|  | 2/12/15 | 99214 |  | f/u ER pharyngitis |
| NCR | 1/20/15 | 99214/ 99393 | NJ Health | cold and cough, no physical |
|  | 6/9/14 | 99213/ 99393 |  | "Here for a physician;" no exam performed |

| AS | 11/26/16 | 99212 | United/Medicaid | medication refill taped to chart |
|---|---|---|---|---|
|  | 10/13/16 | 99212 |  | medication refill taped to chart |
|  | 8/18/16 | 99214 |  | f/u ER visit for tic and bee sting |
|  | 5/13/16 | 99214 |  | tick removed; wants Lyme titer script |
|  | 9/29/15 | 99214 |  | medication refill |
|  | 6/28/14 | 99214 |  | no exam notes |
| FS | 8/10/16 | 99213 | Medicare | no exam notes |
|  | 7/18/16 | 99496 (post ER mgmt) | paid $192.89 | ER follow up, no exam |
|  | 11/24/14 | 99214 |  | Insulin referral and meds; no exam notes |
| TS | 4/2/16 | 99212 | United/Medicaid | medication refill taped to chart |

|  | 2/1/16 | 99214/ 99395 |  | annual physical, only notes say "NL" (normal) |
|---|---|---|---|---|
| YT | 4/16/15 | 99213 | NJ Health | labwork results f/u, no exam |
|  | 4/7/15 | 99212 plus 96372 (injection code) |  | B12 injection |
|  | 6/17/14 | 99214 | United Medicaid | B 12 inj, lab results, no exam |
| MT | 8/19/16 | 99213 | Ameri group | medication refill |
|  | 3/14/16 | 99214 |  | medication refill taped to chart |
|  | 12/23/15 | 99213 |  | medication refill taped to chart |
|  | 1/30/15 | 99213 |  | pt needs labwork; states that pt "not here" |
|  | 10/2/14 | 99212 |  | attempted lab draws by nurse times 2, sent to lab |

| ET | 8/20/16 | 99213 | Medicare HMO | labwork results, "had a large coffee," no exam |
| | 1/13/15 | 99214 | | "Snoring too much," medication refills |
| | 11/29/14 | 99213 | Medicare non-HMO | not intelligible, no exam |

64.    These patients, and dates of service, are just a small example of the numerous false claims submissions created by defendants O. Obuz and V. Obuz, and submitted to the Federal payors by defendant V. Obuz, for all of defendant Lotus' Government health care program patients.

65.    Defendants submitted claims for payment, both the ones listed above and numerous other claims for these and other patients, and were paid, by Federal payors for each submitted claim, for each date of service.

66.    Employees Sara and George make up history and physical records of patients, mostly in the Cinnaminson office, in

order to make it appear that Dr. Obuz has performed these
physicals.  Federal payors are then billed for the performance of an
annual physical examination.

67.    Dr. Obuz also sends and refers all of the patients to the
Medical Home Pharmacy, which is located next door to defendant
Lotus.  Medical Home Pharmacy is owned by defendant O. Obuz.
Dr. Obuz and Mrs. Obuz do not disclose to patients that they own,
and therefore have a financial relationship with, Medical Home
Pharmacy.

68.    Patient E.D. , who has a history of escalating
headaches, and depression, was written a prescription by Dr. Obuz
wrote a prescription to have a twenty four hour urine screening for
heavy metals.

69.    Dr. Obuz frequently orders patients to have screening
for heavy metals.  This screening requires patients, with Medicaid
and Medicare, to pay $125 out of pocket for the supplies for this
testing.

70.    During the time Ms. Menold was employed at the
facility, she has yet to see any patients– including E.D.–  who

tested positive for heavy metals, despite numerous testing done.

71.    These laboratory tests are performed at labs associated with Dr. Obuz and Mrs. Obuz.  For instance, all lab work for patients at Trenton and Fuld are referred to Accurate Labs, which rents space from defendant Dr. Obuz and Mrs. Obuz.  Dr. Obuz and Mrs. Obuz do not reveal or disclose to patients that they have a financial interest in Accurate succeeding by continuing to pay rent.

72.    Patient D.W. was recently diagnosed with end stage breast cancer, and has told Ms. Menold that she was given a several months prognosis.   Ms. Menold first treated D.W. in late 2016, and realized that this woman had never been sent for a mammogram, despite being over age 50.  In approximately January 23, 2017, D.W. went for her first mammogram.  This test showed Stage IV breast cancer.

73.    Ms. Menold has witnessed numerous cases of patients who were not sent for routine mammograms, colonoscopies, and other screening exams.  Instead, defendant V. Obuz instructs patients to use products that he manufactures out of herbs and

vegetables, in order to cure their health problems.

74.    Defendant V. Obuz makes frequent medication errors. Ms. Menold is regularly contacted by patients with medication problems, only to realize that patients are receiving several times the normal dose of the medicine prescribed for the medical condition in question.

75.    Ms. Menold was told by multiple staff members, including Dr. Khan, that they are "sick of cleaning up Dr. Obuz's medication errors."

76.    For Medicaid HMO patients, each HMO provides a capitated payment each month for each patient seen by the practice.

77.    Defendant V. Obuz intentionally fails to notify the Medicaid HMOs when providers leave the practice.  Dr. Obuz recklessly does not notify the HMOs so that defendant Lotus continues receiving the Medicaid capitated payment for each patient.  If these same patients were being seen by defendant V. Obuz, without the replacement and addition of a new provider, Medicaid would determine that Lotus had too many patients and

refuse to provide capitated payments for all of those patients. So, defendant V. Obuz intentionally fails to notify Medicaid, in order to make it appear that there is an appropriate doctor-patient ratio, thereby keeping the capitated payments.

78. Ms. Menold has also seen progress notes, that she had previously written, altered by Dr. Obuz for no apparent reason. The only conclusion Ms. Menold can reach is that it was done for billing purposes.

79. Ms. Menold has been harassed, intimidated, and had the terms and conditions of her employment violated as a result of her complaints about the matters alleged above, and other matters of patient harm, patient negligence, and intentional violations of law.

## V. DEFENDANTS' FALSE CLAIMS ARE MATERIAL TO THE GOVERNMENTS' PAYMENT DECISIONS

80. Defendants' actions, as outlined above, resulted in claims being submitted to Federal and New Jersey payors.

81. These claims were false, for the reasons outlined above,

as these claims were representations that Defendants provided a high level of services to each individual patient, when in fact Defendants failed to provide the claimed level of service. These claims were upcoded, meaning that the claims misstated the level of care that Defendants provided, making it appear that far more care was actually provided.

82.     The false claims and submissions require Defendants to certify that all of the submitted information, including the CPT code attached to the submission, are true, accurate and complete; that the services were medically necessary and indicated; and that the services were personally furnished by the provider, or someone under her/his direction. See, i.e., CMS Form 1500.

83.     Such claims were false because these services were not actually provided; were not actually provided at the level of service for which Defendants sought payment; and/or were provided by a person who was not a provider or was not under the direction of a provider.

84.     Such false claims were paid or approved by the Federal or New Jersey payors.

85.    The false claims made by Defendants were material to the Government's payment decisions, as they had a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

86.    These claims were material to the Government's payment decisions because they contained a material misrepresentation that went to the very essence of the bargain, i.e., that misrepresented the level of services for which payment was to be made.    These representations were misleading in context.

87.    A reasonable person would attach importance to the Defendants' certifications, that the submissions were true and accurate,  in determining a choice of action in the transaction, in determining that a high level of service was provided and deserved to be reimbursed or paid.

88.    The Defendants knew or had reason to know that the recipients of the representation, Federal and New Jersey payors, attach  importance to the truth and accuracy of the submissions in determining its choice of action, to pay or approve the submission,

regardless of whether a reasonable person would do so.

## FIRST CLAIM FOR RELIEF
### Submitting or Causing to be Submitted False Claims -
### 31 U.S.C. § 3729(a)(1)(A) And N.J.C. 2A:32C

89.    Relator realleges and incorporate by reference the above

paragraphs of this Complaint as if fully set forth herein.

90.    This is a claim for treble damages, civil penalties, and

attorneys' fees under the False Claims Act, 31 U.S.C. §§ 3729, *et

seq.* as amended; and the New Jersey False Claims Act.

91.    By means of the unlawful acts described above,

Defendants knowingly presented or caused to be presented to the

United States Government, and the State of New Jersey, false or

fraudulent claims for payment of medical services.

92.    The United States Government, and the State of New

Jersey, unaware of the falsity of the claims paid by Defendants,

and in reliance on the accuracy thereof, paid Defendants for claims

that would otherwise not have been allowed.

93.   The United States Government, and the State of New Jersey,  has made and will make payment upon false and fraudulent claims and thereby  suffered damages. The United States and New Jersey are entitled to a full recovery of the amounts paid to Defendants pursuant to the submission of false claims, which Defendants presented or caused to be submitted, in an amount to be determined at trial.

94.   In addition, the United States is entitled to penalties, for each and every false or fraudulent claim made or caused to be made by Defendants.

## SECOND CLAIM FOR RELIEF
### Use of False Statements to Get
### False or Fraudulent Claims Paid or Allowed
### 31 U.S.C. § 3729(a)(l)(B); and NJC 2A:32A et seq.

95.   Relator realleges and incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

96.   This is a claim for treble damages, civil penalties, and attorneys' fees under the False Claims Act, 31 U.S.C. §§ 3729, *et*

*seq.* as amended, and the New Jersey False Claims Act, NJC 2A:32C et seq.

97.    By creating knowingly false documents, claims and records, as described above, Defendants knowingly made, used or caused to be made or used, false records or statements and omissions material to a false or fraudulent claims, to the United States' government, and the New Jersey Government,  in violation of 31 U.S.C. § 3729(a)(l)(B); and NJC 2A:32A et seq.

98.    The United States, and the State of New Jersey, unaware of the falsity of the records or statements made by Defendants, and in reliance of the accuracy thereof, paid Defendants for claims that would otherwise not have been allowed.

99.    By virtue of the Defendants making or using, or caused to be made or used, false records or statements material to false or fraudulent claims, the United States and the State of New Jersey, have suffered damages in an amount to be proven at trial.

100.  In addition, the United States and the State of New Jersey are entitled to penalties for each and every false or fraudulent claim made or caused to be made by Defendants.

## THIRD CLAIM FOR RELIEF
## Retaliatory Treatment and/or Constructive Discharge
## 31 U.S.C. §3730(h) and N.J.C. § 2A:32C-10

101.  Relator realleges and incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

102.  Relator Ms. Menold has been threatened, harassed, or in any other manner discriminated against in the terms and conditions of her employment because of lawful acts done by Ms. Menold in furtherance of an action under the FCA and the NJ FCA, or other efforts Ms. Menold has made to stop one or more violations of these laws.

103.  As a result of Defendants' actions, Ms. Menold has been damaged, and continues to be damaged.

104.  As a result of Defendants' actions, Ms. Menold is entitled to all relief necessary to make her whole, including reinstatement with the same seniority status that she would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including

litigation costs and reasonable attorneys' fees.


WHEREFORE, Plaintiff ex rel. Kathleen Menold, by and on

behalf of the United States and the State of New Jersey, prays for

the relief recited above, and entry of Judgment for the United

States and the State of New Jersey, and against defendants Lotus,

Dr. Obuz, and Mrs. Obuz.


**JURY TRIAL DEMANDED.**


**RESPECTFULLY SUBMITTED,**

   s/ Regina Dunleavy Poserina
**BEGELMAN & ORLOW**
By:   Regina D. Poserina
       Ross Begelman
       Marc M. Orlow
411 Route 70 East, Suite 245
Cherry Hill, NJ 08034
(856) 428-6020
fax: (856) 428-5485
Email: regina.poserina@begelmanorlow.com
        marc.orlow@begelmanorlow.com

August 11, 2017