# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ex. rel., KATHLEEN MENOLD, M.S.N., APRN, FNP-C; and THE STATE OF NEW JERSEY,<br><br>    *Plaintiffs*,<br><br>v.<br><br>LOTUS FAMILY MEDICINE, et al.,<br><br>    *Defendants*. | Civil Action No.:<br>3:17-cv-1728-PGS-LHG<br><br>**MEMORANDUM**<br>**AND ORDER** |

This matter comes before the court on a *qui tam* action brought by Plaintiff-Relator Kathleen Menold ("Relator"), a registered nurse who filed this action in March 2017 against Defendants Lotus Family Medicine ("Lotus"), Vedat Obuz, M.D. ("Dr. Obuz"), and Ozlem Obuz ("Ms. Obuz"), alleging fraudulent medical billing under the federal False Claims Act (31 U.S.C. § 3729 et seq) and the New Jersey False Claims Act (N.J.S.A. 2A:32 C1). The False Claims Act claims having since been settled, Relator now moves for attorney fees and costs. (ECF No. 20). For the reasons set forth below, Relator's motion is granted in part and denied in part.

## I.

On March 13, 2017, Relator filed the original complaint (ECF No. 1) under seal and amended it shortly after on August 14, 2017. (ECF No. 5). Relator alleged that, during her employment as a nurse with Defendant Lotus, Defendants committed numerous violations of the federal False Claims Act and the New Jersey False Claims Act with relation to Medicare, Medicaid, and TRICARE payments when they: (1) purposely and routinely used inaccurate E/M

CPT codes[1] to inflate billing receivables; (2) billed for services provided by licensed personnel when the services were actually provided by unlicensed personnel; (3) directed patients to fill their prescriptions at the pharmacy adjacent to Defendant Lotus without informing patients the pharmacy was owned by Ms. Obuz; and (4) billed for services by licensed personnel using the names of former Lotus staff even after said staff members had separated from Lotus. (Amended Compl. at ¶¶2-6, ECF No. 5).[2]

One such instance here, reasonably representative of the many alleged violations, entailed a patient visit on January 8, 2016 for prescription refills and a review of lab results. (*Id.* at ¶54). Relator alleged this visit took no longer than five minutes and the only things of note on the chart were a set of six health observations, such as low B12 levels, and a list of the seven medications prescribed. (*Id.* at ¶¶54, 56; Ex. C to Amended Compl. at 1, ECF No. 5-3). Despite this, Defendants billed the visit to Medicare as 99214, an E/M CPT code intended for detailed assessments of moderate to severe problems, are meant to take approximately twenty-five minutes, and must be accompanied by at least two of the following three components: a detailed history, a detailed examination, and/or a medical decision making of moderate complexity. (Ex. A to Amended Compl. at 4, ECF No. 5-1; Ex. C at 2).

After the amended complaint was filed, Relator's counsel and the United States proceeded with the investigation and research of the claims for the next four years until the

[1] Current Procedural Terminology ("CPT") refers to a series of codes assigned to the many individual medical treatments, services, and interactions healthcare providers offer to patients in order to more easily identify what services were provided for the purposes of billing and administration. *See generally United States v. Vaid*, 2019 U.S. Dist. LEXIS 92416, at *11 (E.D. Mo. Apr. 11, 2019) ("CPT codes refer to five digit codes listed in the Physicians' Current Procedural Terminology, an annual publication of the American Medical Association."). Evaluation and Management CPT ("E/M CPT") codes refer to specific CPT codes (99211, 99212, 99213, 99214, and 99215) pertaining to outpatient visits for established patients and differ based on time and complexity. (Ex. A to Amended Compl. at 3-4, ECF No. 5-1).

[2] The amended complaint also included a third claim for relief from retaliatory treatment and constructive discharge, but this count remains open and separate from the present fee petition. (Amended Compl. at ¶¶101-04).

United States intervened on March 8, 2021 (ECF No. 18) to facilitate a $100,956 settlement agreement, $63,097 of which was for restitution plus $2,271 in interest, (Relator Br. at 2, ECF No. 20-1). The present motion for fees and costs was subsequently filed on March 24, 2021, the Court heard oral argument on September 20, 2021, and additional briefing was requested on November 29, 2021. (ECF No. 36).

## II.

The federal False Claims Act ("FCA") was written "to reach all types of fraud, without qualification, that might result in financial loss to the Federal Government." *Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 123 (2003) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). "To incentivize its own enforcement, the FCA allows private individuals to sue for alleged violations—called *qui tam* suits—and offers them a percentage of an eventual recovery" if they "relate" their allegations of fraud to the United States to determine whether further investigation and ultimate intervention is necessary. *See Chang v. Children's Advocacy Ctr.*, 938 F.3d 384, 386 (3d Cir. 2019) (citing 31 U.S.C. § 3730(d)). Where such a case "results in a settlement in which the defendant agrees to pay money[,]" relators are also entitled to "reasonable attorneys' fees and costs" which "shall be awarded against the defendant." *See* 31 U.S.C. § 3730(d); *Simring v. Rutgers*, 634 F. App'x 853, 857 (3d Cir. 2015).

There is subject matter jurisdiction over the federal claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

## III.

Relator seeks fees and costs totaling $121,962.17, composed of 177.99 hours across three partners billing $675/hour each, five hours from what is presumed to be a paralegal at a rate of $90/hour, and $1,368.92 in costs. (Relator Br. at 7). Defendants do not dispute Relator's

entitlement to fees and costs, but strenuously object to the proffered rates and what they allege are excessive hours, arguing that opposing counsel have not provided sufficient documentation to support the current fee petition, and that total fees and costs should not exceed $40,000. (Steven Adler Certification at ¶27, ECF No. 21-1). Defendants in turn proffer multiple options to reduce the total fees and costs, in part including a flat award of one-third of the settlement total, only permitting the billing of one partner rather than three, only permitting the billing of one partner and one hypothetical associate billing 60 hours at $300/hour, and overall reductions of hourly rates. (Ex. C to Steven Adler Certification).

When requesting attorney's fees, the initial burden lies with the fee petitioner to "prove that its request for attorney's fees is reasonable" by "submit[ting] evidence supporting the hours worked and rates claimed." *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Hensley v. Eckerhard*, 461 U.S. 424, 433 (1983)). The opposing party then bears "the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Id.* (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989)). When reviewing the fee request, the "district court cannot 'decrease a fee award based on factors not raised at all by the adverse party,'" but once the adverse party's objections are made, "the district court has a great deal of discretion to adjust the fee award in light of those objections." *See id.* (quoting *Bell*, 884 F.2d at 720-21).

The starting point for calculating reasonable fees is the "lodestar" method, wherein a reasonable hourly rate is multiplied by the number of reasonable hours spent on the litigation. *See Simring*, 634 F. App'x at 857 (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)). "A District Court has substantial discretion in determining what constitutes a reasonable rate and reasonable hours, but once the lodestar is determined, it is

presumed to be the reasonable fee." *Lanni v. N.J.*, 259 F.3d 146, 149 (3d Cir. 2001) (internal citation omitted). The court then retains discretion to make further adjustments to the lodestar should the party seeking the adjustments prove the necessity. *See Rode*, 892 F.2d at 1183.

    a.  <u>Reasonableness of Hours Billed</u>

In support of the fee petition, Relator proffers: (1) an invoice with fifteen pages of billing line items where the entries are listed by date, time spent, and a short description of the nature of the work each line item entailed ("Invoice") (ECF No. 20-3); (2) a table categorizing the total billed hours from the Invoice into nine distinct categories of work ("Summary Table"); and (3) three certifications from the respective three attorneys who worked on the matter (ECF Nos. 20-4; 20-5; 20-6). In opposition, Defendants raise several objections, including double billing, triple billing, excessive time spent per line item, overbilling, and insufficient evidence on the part of Relator's counsel to substantiate the reasonableness of the hours. (Def. Opp. at 13).

"To determine a reasonable number of hours, the starting point is the number actually spent on litigation, but a district court may exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Simring*, 634 F. App'x at 857 (internal citation and quotation omitted). Time spent on tasks "useful and of a type ordinarily necessary to secure the final result obtained from litigation" is considered reasonable. *Id.* (quoting *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 564). Finally, the "court can deduct hours when the fee petition inadequately documents the hours claimed." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433).

After review of the record, the Court agrees with Defendants and notes the numerous ambiguities and inconsistencies amidst the materials submitted by Relator, all of which together preclude a precise examination. Firstly, the Invoice does not specify which line items were

submitted by which attorney, greatly obstructing the Court's attempt to identify tasks that were overstaffed or overbilled. Secondly, the line item descriptions within the Invoice vary drastically with regard to detail – leaving the court without a manner to confirm evidence of duplicate, triplicate, excessive, and overbilling. Some line items contain convincing detail, like the April 18, 2017 entry of "Communicate with client concerns about doctor conduct. General discussion of case and timing of amendment" to justify the listed 0.5 hours billed as reasonable.

| 04/18/2017 | Communicate with client concerns about doctor conduct. General discussion of case and timing of amendment. | 0.50 675.00/hr | 337.50 |
|---|---|---|---|

(Invoice at 4). Other entries, however, contain minimal detail that call into question the reasonableness of hours billed, like the five hours on March 15, 2017 simply marked "Billable" or the April 17, 2020 entry of 1.8 hours to "Communicate with client" (Invoice at 2, 10).

| 03/15/2017 | Billable | 5.00 90.00/hr | 450.00 |
|---|---|---|---|

| 04/17/2020 | Communicate with client | 1.80 675.00/hr | 1,215.00 |
|---|---|---|---|

Reliance on the Summary Table is similarly troublesome. While it does provide hours organized by attorney and category of work, the separate categories contain considerable overlap, such as research and drafting of the complaint (B), research and drafting of the disclosure statements (C), and general legal research and strategy (F). (Summary Table at 1).

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| Initial Review of Allegations (due diligence) | Research, review and draft of complaints, pleadings and motions | Research, review and draft of disclosure statement and damage models, white paper research for Gov | Prepare for Conf and communications w/Govt Attorneys | Communication, legal advice and case status to clients | Legal Research and strategy | Prepare for and attend relators' meeting with US Attorneys | Communicate with Adversaries | Fees on Fees |

None of Relator's submissions indicate which billing line items belong in which category; as such, the Court has no reasonable manner to determine whether the hours are accurately reported

or categorized. Were the Court to adjust one of the category totals based on an objectionable line

item, it would risk incorrectly adjusting one category if the line item actually belonged to a

different category. For example, the 6.7 hours from June 7, 2017 for "Document production

disclosure statement and amend complaint, review of medical records for same; legal research on

case issues" could seemingly fit into either the complaint drafting category (B), disclosure

drafting (C), or general legal research (F). (Invoice at 5).

| 06/07/2017 | Document production disclosure statement and amend complaint, review of medical records for same; legal research on case issues | 6.70 675.00/hr | 4,522.50 |
|---|---|---|---|

When reviewing a fee petition, "it is not necessary to know the exact number of minutes

spent nor the precise activity to which each hour was devoted nor the specific attainments of

each attorney." *Rode*, 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. American

Radiator & Standard Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973). However, a fee petition

is still "required to be specific enough to allow the district court 'to determine if the hours

claimed are unreasonable for the work performed.'" *Id.* (quoting *Pawlak v. Greenawalt*, 713 F.2d

972, 978 (3d Cir. 1983)).

To better assess Relator's petition, the Court ordered additional briefing on November 29,

2021, specifically requiring that further explanation be submitted for each billing entry where

multiple attorneys billed. (ECF No. 36). However, while Relator's supplemental briefing

clarified the occasions when multiple attorneys billed the same event, it often failed to provide a

satisfactory justification for multiple attorneys and in fact materially altered several numerical

figures such that the overall total would change if accepted as is.[3]

---

[3] As one example, the supplemental briefing shows three attorneys billing 6.7 hours each for appearing at the June 6, 2017 meeting, totaling 20.1 hours and $13,567.50 (Relator Supp. Br. at 6).

| 6/06/17 | RDP, RB, MO | Appear | 6.70 | $ 13,567.50 |
|---|---|---|---|---|

Accordingly, the Court finds that Relator's petition lacks sufficient detail to support the requested hours considering Defendants' specific objections. The work of multiple attorneys can certainly be justified, particularly at the outset of a case when there is a partnership decision necessary to commit a firm to undertake a prospective case when a substantial investment of the firm's time and costs will occur over a period of years. However, apart from the initial intake meetings, the Court is not convinced that the present case at any other time required three attorneys charging senior partner rates. The Court also finds that Relator has not rebutted Defendants' argument that excessive time was spent on single tasks, such as the need for over sixteen hours to draft the pleadings despite counsel's extensive experience and familiarity litigating Medicare billing cases. (Relator Supp. Br. at 2). Finally, despite Relator's assertion to the contrary (Relator Reply at 7-8), the record indicates large portions of the billed hours indeed could have been more efficiently performed by an associate or trained paralegal, such as document review, editing, or compiling data for use in the pleadings or disclosure statements.[4]

Because the record is insufficiently detailed to make precise adjustments to Relator's submitted hours, the Court will modify and adopt one of Defendants' proposed compromises

---

However, the Invoice line items on which Relator relied to calculate the total fee request shows entries of 7.1, 7.1, and 6.7 hours, totaling a greater 20.9 hours and $14,107.50. (Invoice at 5).

| 06/06/2017 | Appear for/attend relators meeting in Newark | 7.10 675.00/hr | 4,792.50 |
| | Appear for/attend initial relator meeting; including travel time and meeting with client | 6.70 675.00/hr | 4,522.50 |
| | Appear for/attend relators meeting in Newark. | 7.10 675.00/hr | 4,792.50 |

[4] In *Missouri v. Jenkins*, the Supreme Court recognized paralegals as capable of many tasks, including "factual investigation, … , document production … [and] compilation of statistical and financial data[.]" 491 U.S. 274, 288 n.10 (1989) (noting that where factual investigation and compilation could be accomplished by non-lawyers but is completed by an attorney, the non-legal work can warrant a lower rate). Here, a paralegal or associate undoubtedly could have reviewed or edited at least portions of Relator's submissions and presentation to the government. Further, although Relator's reply brief highlights the eight-page chart inserted into the amended complaint as a point of particularity specific to this case, the Court finds that assembly and compilation of such data under the supervision of an attorney would fall well within the realm of a paralegal's ability. (Relator Reply at 8).

which accounts for their objections of double billing, triple billing, overbilling, and excessive billing that the Court agrees are present. Specifically, Defendants' Proposal Number 2 reduces Relator's requested fee total by approximately two-thirds, yielding an award of $40,944 to reflect their objection that only one of the three senior attorneys was actually necessary. (Certification of Steven I. Adler, Ex. C). Defendant's Proposal Number 3 recommends the same adjustment, but proposes adding a hypothetical associate billing 60 hours at $300/hour. *Id.*

In an effort to reach a fair and reasonable number of hours despite the cumulative imprecision of Relator's submissions, the Court will allow 60 hours, approximately one third of the original total of attorney hours, to be billed at a reasonable senior partner rate and 60 hours to be billed at a reasonable senior associate rate. An additional 8.1 senior partner hours shall be included based on the reasonableness of having multiple attorneys present to make sense of the claims at the initial intake meetings.[5] Because there was no objection to the five hours of paralegal work included in the petition, this will be included allowed as well. The Court therefore will utilize a grand total of 68.1 partner hours, 60 associate hours, and 5 paralegal hours in the lodestar calculation. Absent further, detailed submissions that would permit more precise analysis of redundant entries and excess billing, the Court is satisfied that approximately 128.1 attorney hours between one senior partner and one senior associate is sufficient for this case where very little was filed and where no discovery or depositions took place.

---

[5] Comprised of 2.5 hours from February 20, 2017, 1.2 hours from March 2, 2017, and 4.4 hours from March 12, 2017. (Relator Supp. Br. at 4-5).

| Date | Attorneys | Activity | Hours | Amount |
|---|---|---|---|---|
| 2/20/17 | RB, MO | Consultation | 2:50 | $3,375 |
| 3/02/17 | RB, MO | Communicate | 1:20 | $1,620 |
| 3/12/17 | RDP, MO, RB | Communicate | 2.20 | $4,455 |

b. <u>Reasonable Hourly Rates</u>

Having now determined what hours were reasonably expended, the Court now turns to the matter of hourly rates. "[A] reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). These rates can be reached by "assess[ing] the experience and skill of the prevailing party's attorneys and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005) (citing *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)). The petitioner normally addresses this burden by "submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *See S.D. v. Manville Bd. Of Educ.*, 989 F. Supp. 649, 657 (D.N.J. Jan. 7, 1998).

In support of the proffered $675/hour rate, Relator submits three separate certifications from Mr. Marc Orlow, Mr. Ross Begelman, and Ms. Regina Poserina, each attesting to their many years of experience litigating *qui tam* matters and certifying that their current billing rate of $675/hour has been received in litigation within the District of New Jersey and the Eastern District of Pennsylvania. (Ross Begelman Certification at ¶7, ECF No. 20-4; Marc Orlow Certification at ¶7, ECF No. 20-5; Regina Poserina Certification at ¶¶1-2, 6-7, ECF No. 20-6). Although only Ms. Poserina's certification makes specific reference to the attorney fee schedule from Philadelphia's Community Legal Services, ("CLS rates"), the briefing argues the current CLS rates are an appropriate measure for reasonable rates, noting that the CLS rates have been

recognized by the Third Circuit as fairly reflective of the prevailing market rates in and near Philadelphia. (Relator Br. at 7).[6]

Defendants argue that the $675/hour rate charged by Relator's counsel is excessive, particularly because the CLS rates on which Relator's counsel rely are for Philadelphia rather than Cherry Hill, NJ and Conshohocken, PA where Relator's counsel are based. (Def. Opp. at 7, ECF No. 21; Steven Adler Certification at ¶¶3, 15). Consequently, Defendants posit that a figure closer to $500/hour is a far more reasonable rate to be used for Relator's three senior attorneys. (Steven Adler Certification at ¶¶14-18).[7]

When setting a reasonable hourly rate, the Court "must rely upon the record." *See Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996) (internal citation omitted). Here, Relator's counsel have proffered nothing outside of their own self-interested certifications attesting to the reasonableness of their hourly rates and thus contribute little to the Court's consideration of what is reasonable in the relevant community. However, despite this shortcoming, the Court finds that the requested CLS-based rates are reasonable as Relator's counsel and their CLS-based hourly rates were recently upheld by the Third Circuit in *United States ex rel. Palmer v. C&D Techs., Inc.,* 897 F.3d 128 (3d Cir. 2018).

In *Palmer*, Mr. Begelman and Mr. Orlow represented a relator in a *qui tam* action within the Eastern District of Pennsylvania pertaining to the shipment of defective batteries for intercontinental ballistic missile launch controls. *Palmer*, 897 F.3d at 131. The *Palmer* matter progressed well beyond the state of the current case, entailing depositions, motions for summary

---

[6] *See also Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001).
[7] Defendants also argue in their supplemental brief that the CLS rates have "previously been held inapplicable in New Jersey" due to their Philadelphia-based origins rather than the present New Jersey forum. (Def. Supp. Br. at 2, ECF No. 42) (citing *United States ex rel. Bahnsen v. Boston Scientific Neuromodulation Corp.*, 2021 U.S. Dist. LEXIS 6674, at *9 n.1 (D.N.J. Jan. 11, 2021)). However, the text on which Defendants rely merely states that the CLS rates were "approved for use in Philadelphia and [do] not control in Newark," far from a categorical rejection.

judgment, motions for reconsideration, and *Daubert* motion practice prior to settlement. *Id.* at

133. When the relator later moved for $2,367,904.85 in fees and costs, the *Palmer* defendant

objected that "the case had been over-staffed and over-worked by the Relator's various sets of

lawyers, and that the fee petition was based on the wrong hourly rates and included duplicative

entries[.]" *Id.* at 132. The relator responded to these objections by increasing the fee demand to

$3,278,115.99 utilizing new hourly rates "extrapolated" from the contemporary CLS rates. *Id.*

The district court declined to "follow the Relator's lawyers into the nether world of

'extrapolating' CLS rates" and instead directed the parties to use the midpoint of the appropriate

CLS range as the hourly rate, a decision later affirmed by the Third Circuit. *See United States ex*

*rel. Palmer v. C&D Techs., Inc.*, 2017 U.S. Dist. LEXIS 62932, at *13-14 (E.D. Pa. Apr. 25,

2017); *see also Palmer*, 897 F.3d at 135, (remanding for additional consideration as to

reasonableness of fees on fees but affirming in all other respects).

　　　　When the *Palmer* district court decided the motion for fees and costs in 2017, it found

that "for Mr. Begelman, the current CLS rate range is $600-$650 per hour" per the published

2014 CLS rates, resulting in a midpoint figure of $625/hour in 2017. *Palmer*, 2017 U.S. Dist.

LEXIS 62932, at *12-13. The current CLS rates took effect on July 1, 2018 and suggests

between $650-$700/hour for attorneys with over 25 years of experience.[8] Because each of

Relator's attorneys began practicing over 25 years ago (Ross Begelman Certification at ¶3; Marc

Orlow Certification at ¶3; Regina Poserina Certification at ¶3), the $675/hour rate, the midpoint

of current CLS rates, would appear to be a reasonable attorney rate for the present matter. *See*

*also Palmer*, 897 F.3d at 138 ("[T]he District Court was within its discretion to apply the mid-

point of the CLS rates for a 'reasonable' hourly rate."). The Court will therefore allow $675/hour

---

[8] *Attorney Fees – Effective July 1, 2018*, Community Legal Services of Philadelphia, https://clsphila.org/about-community-legal-services/attorney-fees/ (last accessed January 31, 2022).

to be used as the senior partner rate. Regarding the hypothetical associate rate, the analysis is

different from the senior partner rate because each of the three attorneys in Relator's counsel's

firm have significant knowledge and experience in FCA cases. As such, the CLS rate for

attorneys with sixteen to twenty years of experience is an acceptable range and the Court will

utilize $520/hour as the senior associate rate.[9]

c. The Lodestar

In addition to the above discussed of fees, Relator also seeks $1,368.92 for assorted costs

and expenses. Defendants raise no objections to this figure and so the $1,368.92 will be

accepted. The resultant lodestar plus costs is thus as follows:

| Type | Adjusted Hours | Rate/Hour | Total |
|---|---|---|---|
| Senior Attorney | 68.1 | $675 | $45,967.50 |
| Senior Associate | 60 | $520 | $31,200.00 |
| Paralegal | 5 | $90 | $450.00 |
| Costs | | | $1,368.92 |
| Final Total | | | $78,986.42 |

d. Limited Success Reduction

Finally, Defendants request a flat reduction of the lodestar in light of the minimal success

attained, arguing that because the claims were not novel or complex and the settlement amount

was very modest. (Def. Opp. at 12-13).

"Where a plaintiff has achieved only partial or limited success, a district court may adjust

the fee downward." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 318 (citing *Hensley*, 461

U.S. at 434-36); *see also Rode*, 892 F.2d at 1183. As an example, the *Palmer* defendants sought

a 20% reduction to the fee award due to limited success, namely how the relator settled for $1.7

---

[9] The current CLS rates suggest a rate of $475-530/hour for attorneys with sixteen to twenty years of experience.

million, only 6% of the roughly $30 million in damages originally sought. *Palmer*, 2017 U.S. Dist. LEXIS 62932, at *25-26. The trial court, having overseen the case since its inception, considered the case's overall success and ordered a 10% cut to reflect relator's limited success.

Unlike in *Palmer*, the Court has seen very little of this case since its inception in 2017 and thus has far less to consider. Further, because neither the complaint nor the amended complaint include demanded damage figures, it is difficult to gauge whether the $100,956 settlement was in fact a nuisance settlement amount as Defendants claim. (Def. Opp. at 13). Accordingly, the Court will decline to enter a flat fee reduction for limited success.

## IV.    CONCLUSION

For the above reasons and considerations, the Relator's motion is granted in part and denied in part, subject to the modifications articulated herein.

## <u>ORDER</u>

**THIS MATTER** having come before the Court on Plaintiff-Relator Kathleen Menold's Motion for Attorney Fees (ECF No. 20); and the Court having considered the papers and heard oral argument; and for all of the above reasoning and for good cause shown,

**IT IS** on this 3rd day of February, 2022:

**ORDERED** that Plaintiff-Relator Kathleen Menold's Motion for Attorney Fees (ECF No. 20) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiff-Relator is awarded a total of $78,986.42 in attorney fees and litigation costs.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

14